### 9175.　YOUNG *et al. v.* FIRST NATIONAL BANK OF COVINGTON.

1. "State statutes relating to usury and prescribing penalties for the charging, reserving, or taking of usury, have no application to negotiable instruments held by national banks.　The penalty fixed by the U. S. Revised Statutes, § 5198 (U. S. Comp. St. 1901, p. 3493), against national banks, for 'the taking, receiving, reserving, or charging' of usury, and the remedy given by the act of Congress against national banks for taking usurious interest, are exclusive."　The foregoing rule

"is applicable in all cases where a negotiable instrument infected with usury is made payable to such a bank originally, or where it has been discounted by such a bank and the bank, as holder, is endeavoring to collect the face thereof with knowledge of the usurious interest." "A surety or guarantor of a debt to a national bank is not discharged from liability on the note because the bank charged or received usury." *Reese v. Colquitt National Bank,* 12 *Ga. App.* 472 (77 S. E. 320), and citations.

2. Where a note on which usury has been charged by a national bank is renewed, the bank, in an action on the renewal note, can recover only the amount of the original loan, even though no more than the legal interest was charged on the renewal. See notes to Citizens' National Bank of Danville *v.* Gentry, 56 L. R. A. 673, 683 (111 Ky. 206, 63 S. W. 454); Brown *v.* Marion Nat. Bank, 169 U. S. 416 (42 L. ed. 801); 21 Am. & Eng. Enc. Law (2d ed.), 393 (c).

3. The statutory limitation of two years in the national banking act of June 3, 1864, c. 106, 13 Stat. 99, applies only to a suit to recover the penalty of double the interest *received* or *paid*, and not to the defense of usury to defeat the recovery of interest, and begins to run from the time of *payment* of the usurious interest. McCarthy *v.* First Nat. Bank, 223 U. S. 493 (32 Sup. Ct. 240, 56 L. ed. 523); 21 Am. & Eng. Enc. Law (2d ed.), 393 (d); note in 56 L. R. A. 686.

4. Where illegal interest has been *actually paid* to a national bank, the amount so paid can not be applied by way of set-off or payment in an action by the bank, as the *only remedy in such case* is that of an action of debt under the national banking act to recover twice the amount of interest paid. Barnet *v.* Muncie Nat. Bank, 98 U. S. 55 (25 L. ed. 212); Belles on National Banking Act, 223, §§ 2, 3; 21 Am. & Eng. Enc. Law (2d ed.), 394.

5. Although payments made directly as interest will be so regarded, and can not be made use of as a set-off or counter-claim under U. S. Revised Statutes, § 5198, yet where a payment is made generally, without any direction as to the application, it will ordinarily be applied on the principal instead of on the interest, all right to which was forfeited under that section by the agreement for usury. Bank of Cadiz *v.* Slemmons, 34 Ohio St. 142 (32 Am. R. 364); Note in 56 L. R. A. 685, 701; 21 Am. & Eng. Enc. Law (2d ed.), 390 (e).

6. A stipulation for the recovery of ten per cent. as attorney's fees, in a note payable to a national bank, is not usurious and unenforceable, but may be enforced when the provisions of the law as to notice are complied with.

7. The courts will not countenance devices or contrivances to evade the usury laws, but will always look to the actual nature of the transaction, and not to the form which the parties may have given to it. Where it is uncertain from the evidence whether, in a transaction by a national bank with the makers of a note due the bank, the debt was actually paid by a loan negotiated with an individual director of the bank, or whether it was in fact a renewal by the bank and an attempt to evade the usury laws by the ostensible substitution of a new creditor and a transfer of the new note to the bank, the issue should be submitted

to the jury, under appropriate instructions from the court. The court erred, under the facts of this case, in directing a verdict.

DECIDED MARCH 14, 1918.

Complaint; from Newton superior court—Judge Smith. August 11, 1917.

The First National Bank of Covington brought suit against Young and Weldon on a promissory note dated January 12, 1915, payable to C. R. Rogers or order, for the principal sum of $1091.42, and bearing interest after maturity at eight per cent. per annum, and also providing for ten per cent. attorney's fees in case of suit thereon. The note was payable January 1, 1916, and was transferred to the First National Bank by C. R. Rogers. The petition alleged the giving of the ten-days notice as required by law, and asked for the recovery of ten per cent. attorney's fees. The petition further alleged that Young gave to Rogers a deed to certain land to secure the loan, and prayed for a special judgment against the land. The defendants filed pleas in which they admitted the execution of the note but denied that they were indebted in the amount alleged. Weldon alleged that he signed the note as indorser only, and denied that he was indebted to the bank, because, he alleged, the note contained usury. He claimed further that the bank was not a bona fide holder of the note, that as a matter of fact Rogers was never a party to this transaction, and that he and Young never owed Rogers any amount whatever; that the bank, by its cashier, knowing it had charged usury in the previous note renewed from time to time by the defendants, for the purpose of evading the legal effect of this, inserted the name of C. R. Rogers as payee of the note, C. R. Rogers being the father of the cashier of the First National Bank and also one of its directors. Young admitted that he had signed the notes sued on, but denied that he was indebted in the amount alleged. He alleged that this note was a renewal of a debt made originally on January 3, 1912, and renewed each year up to and including 1915; that the original debt was $800; that in the original note, as well as in the renewals, he was charged eleven and twelve per cent. interest, and that the note sued on was a renewal of those notes and represented the original debt of $800 with the usurious interest contained in the old notes. He further alleged that while the note appears to have been given to C. R. Rogers, the latter was never known in the transaction; that he had never spoken to C. R.

Rogers relative to this matter; that he could not read or write, and that the name of C. R. Rogers was never mentioned to him; that this was not a debt owing to C. R. Rogers; that the bank, knowing the usurious character of its transaction with the defendant, inserted the name of C. R. Rogers in the note in order to avoid the effect of the illegal rate of interest previously charged; that C. R. Rogers was the father of the cashier of the bank, and was also one of the bank's directors; that C. R. Rogers never bought the note of which the note sued on is a renewal; that if any checks passed, it was not a bona fide transaction, but merely an attempt to avoid the effect of the usury charged. The defendants further alleged that they had made certain payments on this note, which were not credited, and also that they should have credit for certain payments made on the old notes, of which they claim this was a renewal, which should also be deducted from the principal of the debt. They further insisted that they were not liable for attorney's fees, that the claim for such fees was contrary to the national banking act. After the introduction of evidence the court directed a verdict against Young as principal and Weldon as surety, for the principal sum of $1004.97, and for the sum of $50.29, interest to date of judgment, and for $105.51 as attorney's fees, and costs, and establishing a special lien against the land described.

Defendants made a motion for a new trial, based upon 'the general grounds, and further alleging, that at the conclusion of the evidence, defendants moved the court to direct a verdict in favor of the plaintiff against defendants for the principal sum of $800 only, less the amount of credits shown upon the note sued on, and that the court refused to do this, but directed a verdict and judgment for the full amount sued for, and interest, and ten per cent. attorney's fees; and that this was error, for the following reasons: that the evidence, they contend, showed without contradiction that the note sued on was a renewal of a note given for a loan of $800, and that the old note contained usury, and that this was renewed in January, 1915, by giving the note sued upon to C. R. Rogers, one of the directors of the said bank, who took the note with full knowledge of the usury charged therein, and that if the bank ever purchased it from C. R. Rogers, the bank did so with full knowledge of the usury with which it was infected; further,

that the court erred in rendering judgment for attorney's fees, since, as movant claims, such attorney's fees are usurious, and the agreement to pay attorney's fees is void where such a debt is held by a national bank, it being beyond the charter power of a national bank so to contract for the payment of attorney's fees; and further, because the court erred in refusing to credit upon the principal of said debt all payments made by the defendants; and because the court erred in holding that the taint of usury in the original note and in the renewals did not attach to the note sued on, but was purged by the renewal of the last note and the giving of the note to one of the directors of the bank; and further, because a national bank can not collect any interest whatever upon a debt when the bank has charged or contracted to receive usurious rates of interest, but all payments made upon a usurious debt must be applied to the discharge of the principal, whether the debt be made payable to the bank itself, or be based upon a note discounted to the bank. The court overruled the motion for a new trial, and the defendants excepted.

*R. W. Milner,* for plaintiffs in error. *King & Johnson,* contra.

HARWELL, J. (After stating the foregoing facts.) It is insisted, in the first place, that the bank, being a national bank, had no right to recover attorney's fees; that such recovery would be usurious and beyond its charter powers as conferred by the national banking act. There is nothing in the national banking act that prevents the recovery of attorney's fees by a national bank, unless they are held to be usury. In Georgia, by statute, such recovery is permitted, provided the required notice is given; and there no exception is made in the case of national banks. Civil Code (1910), § 4252. In *National Bank of Athens* v. *Danforth,* 80 *Ga.* 55 (8), 70 (7 S. E. 546), it was said: "A contract to pay attorney's fees for collecting, in addition to principal and interest, is not on its face usurious; nor does it become usurious by reducing the debt to judgment and including in the judgment ten per cent. for attorney's fees." See also *Merck* v. *American Freehold &c. Co.,* 79 *Ga.* 213 (7 S. E. 265). In Fowler v. Equitable Trust Co., 141 U. S. 411 (12 Sup. Ct. 8, 35 L. ed. 794), it was said: "In Illinois a provision in a trust deed providing for the payment by the borrower, in addition to ordinary costs, of a reasonable solicitor's fee, not exceeding five per cent., in the event of a suit

to foreclose, does not of itself make the contract usurious; nor is such contract void as against public policy." Mr. Justice Harlan, in discussing this question of attorney's fees, said: "The loan was not therefore infected with usury, unless the provision in the trust deed providing for the payment by the borrower, in addition to ordinary costs, of a reasonable solicitor's fee, not exceeding five per cent., for collection, in the event of a suit to foreclose. But it it is the law of Illinois that a provision of that character does not, of itself, make the contract usurious." The recovery of attorney's fees was upheld by the Supreme Court of the United States in that case. The court did not err in holding in the instant case that a national bank may recover attorney's fees when suing on a note which provides for such recovery.

The headnotes state the principles of law which should govern this case. The difficulty lies in the application of those principles to the facts of the case. The general rule is that the defense of usury against a bona fide holder for value, without notice of the usury, of a negotiable promissory note, who acquires the note before maturity, is not good unless the contract reserving usury is made void by the taint of usury. Neither the statute of Georgia nor the national banking act makes a contract tainted with usury void. 39 Cyc. 1078. See the discussion of this question by Mr. Justice Lamar in *Weed* v. *Gainesville &c. Railroad Co.,* 119 *Ga.* 576-593 (46 S. E. 885). But the Supreme Court of Georgia holds that the defense of usury is good even against a bona fide holder of a negotiable promissory note who acquired the note before its maturity. *Atlanta Savings Bank* v. *Spencer;* 107 *Ga.* 629 (7), 636 (33 S. E. 878). However, in the instant case this question of law is really not pertinent, because the bank had notice of the usury charged or received. It is not disputed that the original loan was $800, and that the bank charged the defendants a usurious rate of interest on the old notes. Moreover, this transaction in January, 1917, which resulted in the substitution of C. R. Rogers for the bank and the giving of this note to him, was brought about with full knowledge on the part of the officers of the bank, to wit, its president and cashier. The cashier, P. J. Rogers (Phonzo Rogers), is the son of C. R. Rogers, and it is not disputed that the bank, through its officers, had full knowledge of the fact that this note sued on was given in renewal of the old note due the bank

reserving usury. The note on which suit is brought was acquired by the bank with knowledge of the fact that the consideration of the note was a usurious debt due the bank.

With reference to the application of payments as stated in headnote 5: Under the law of this State, payments on a usurious debt, when not otherwise directed, will be applied according to § 3433 of the Civil Code (1910) of Georgia,—that is, first to the payment of lawful interest, and then to the principal. *Haskins* v. *Bank of State of Georgia*, 100 *Ga.* 216 (27 S. E. 985); *Atlanta Savings Bank* v. *Spencer*, supra. This has been held because in this State, prior to the act approved August 18, 1916 (Ga. L. 48), the taint of usury did not cause a forfeiture of the entire interest, but only the excess of interest above eight per cent.; hence any payment on a note, when not otherwise directed, was, as the law then stood, properly applied to lawful interest first, and then to the principal. Under the national banking act, however, and under the law of Georgia since the act of 1916, supra, the entire interest is forfeited by the taint of usury in the contract; hence there will be no application of any payment to interest, but any payment which is made, unless it is especially directed by agreement of the parties to the payment of interest, must be applied to the principal. The writer mentions this to show that there is no real conflict in the law of this State and the law in reference to national banks as announced in the 5th headnote. Of course, if by understanding or agreement between the parties a payment is applied to the reduction of interest on a note held by a national bank, the debtor can not plead such in reduction of the principal when sued thereon by the bank, but his remedy would be to bring a separate action for the penalty in two years after the payment of the interest is made.

It is insisted by the bank that when this note was taken, in January, 1913, payable to C. R. Rogers, the debt due the bank was *actually paid* by these defendants, and that they can not, because of the provisions of the national banking act as stated in the 4th headnote, plead, as against the note sued on, the forfeiture of interest because of the reservation of usury in the original notes payable to the bank. The question arises: Was the debt that was due the bank in 1915 *actually paid* by the giving of the note to Rogers and the substitution of the new creditor, C. R. Rogers, a

director of the bank, or was this transaction in fact only a renewal by the bank of the debt due to it, and was the substitution of Rogers as creditor an effort on the part of the bank, through its officers, to evade the charge or reservation of usury denounced by the national banking act? The statute contemplates an actual payment of the usury. *First National Bank of Blakely* v. *Davis,* 135 *Ga.* 687 (3) (70 S. E. 246, 36 L. R. A. (N. S.) 134). Promissory notes are not payment until themselves paid. Civil Code (1910), § 4314. If this transaction was an actual payment of the bank's debt, then the defendants can not plead, against the notes sued on, the forfeiture of all interest included therein, because of the usurious rate of interest charged or reserved in the old notes. The defendants insist, however, that this was simply a device or contrivance on the part of the bank, through its officers, to substitute an ostensible creditor in order to evade the usury laws; that there was no actual payment to the bank in January, 1915. They claim that C. R. Rogers was never known in the transaction; that they applied to the president of the bank to renew the debt; that he agreed to renew it, and that they did renew it with the bank by giving this note; that they had no communication with C. R. Rogers. They insist that the real truth of the transaction is that C. R. Rogers did not lend them any money, but that the cashier simply made the note payable to C. R. Rogers, and it was immediately turned over to the bank, and that it was a renewal of the debt to the bank, and that this made a question for the jury to determine, and that the court erred in directing a verdict.

In this State "No contrivance or arrangement between the parties to any such unlawful transaction or their privies shall have the effect to discharge such forfeiture, except it be an actual and full payment of the amount so forfeited." Civil Code (1910), § 3440. This section has reference to preceding sections touching the forfeiture of excess interest charged or taken or contracted to be reserved, charged, or taken under the laws of Georgia. "If from a consideration of the whole transaction it becomes apparent that there exists a corrupt intent to violate the usury laws, the courts will permit no scheme or device however ingenious, to hide the face of the usury." 39 Cyc. 918 (4), and citations. "Any contrivance to evade the statutes against usury and to enable the lender to receive more than the legal interest, will render the

transaction usurious though legal on its face, since the courts will always look to the actual nature of the transaction and not to the form which the parties have given to it." 29 Am. Eng. Ency. Law (2d ed.), 461-2. "Where in a given case the undisputed evidence discloses a scheme or device adopted by a lender of money, from which it is palpably apparent that no other purpose was in view than an attempt to obtain more than the lawful interest on the money loaned, it is not error for the judge to refuse to submit to the jury the question as to whether there is usury in the transaction. If, however, there be doubt as to whether the transaction is a cover for usury or one bona fide entered into in the ordinary course of business, it should be left to a jury to determine from all the facts and circumstances of the case whether it was a legitimate transaction or a mere device to evade the laws against usury." *Atlanta Savings Bank* v. *Spencer,* supra; *MacKenzie* v. *Garnett,* 78 *Ga.* 251; *Pope* v. *Marshall,* 78 *Ga.* 635 (4 S. E. 116). See also Gadsden *v.* Thrush, 56 Neb. 565 (4) (76 N. W. 1060, 45 L. R. A. 654).

In the national banking act it is distinctly stated that the taking, receiving, or charging of a rate greater than is allowed by the act shall be deemed a forfeiture of the entire interest which the note, bill, or other evidence of debt carries with it, or which has been agreed to be paid thereon. The act further provides that a penalty of double the amount of interest paid may be recovered, if suit is commenced within a period of two years from the time the interest is paid. The inhibition, therefore, against the charging of usury by national banks is clear and plain. Certainly the courts, in the face of this law, will not countenance a transaction which is consummated for the purpose of evading the forfeiture, though the transaction be connived at by the debtor. The debtor can not make such a transaction legal by agreeing to pay the usury. If, therefore, the arrangement made in this case, that is, the substitution of a new creditor, to wit, a director of the bank, by the giving of a note to him and thereafter transferring this note to the bank, was for the purpose of evading the usury law, then it will be held that the giving of this note to Rogers was simply a renewal of the debt by the bank itself, and the debtor would have the right to plead, against the note sued on, the forfeiture of the entire interest included therein, as

provided by the national banking act, and also to set off against the original debt such payments on the notes as had not by agreement of the parties been applied to the payment of interest.

It is doubtless true that a national bank might evade the usury laws by the payment of its debt by another creditor and the substitution in its place, in good faith, of another creditor. In that event the remedy of the debtor would be to bring an action against the bank for the recovery of double the interest so paid. If, therefore, in the instant case the truth is that the debtors in good faith borrowed money from C. R. Rogers and actually paid off the note to the bank, and thereafter the note given to Rogers for the bona fide loan made by him to the debtors was transferred to the bank by Rogers, the defendants can not plead a forfeiture by the bank of the interest included in the note, because of the provision of the national banking act that a separate action must be brought to recover interest actually paid. The bank in that event would be entitled to recover the full amount due on the note. We think, however, that this issue should have been submitted to a jury, under proper instructions from the court. This, like any other matter, can be established by circumstantial evidence, and there was sufficient evidence in this case to authorize the submission of this question to a jury. *Furr* v. *Keesler,* 3 *Ga. App.* 188 (2) (59 S. E. 596).

Young testified: "In 1915 I asked him [the president of the bank] to renew it, and he said he would. I went there to his office and he was pretty busy, and next time I came by he said he would take the note, that Mr. Rogers would take the note. I don't know which Mr. Rogers it was. I had the transaction with Mr. Rogers, the cashier of the bank, Mr. Phonzo Rogers. Mr. C. R. Rogers was not there. Mr. Phonzo Rogers was the cashier of the First National Bank at that time. I know his father, C. R. Rogers when I see him, but he was not there. He did not have anything to do with this transaction. I never asked him anything about it at all; I never had any talk with him." Weldon testified: "As to what relation C. R. Rogers had with this last note—none whatever that I knew anything about at the time. P. J. Rogers (Phonzo Rogers) the assistant cashier of the bank was present." According to the testimony of P. J. Rogers, the cashier, it appears that he represented his father in the transaction, that his father had

nothing to do with the note except through him, and made the loan through him and paid the bank's claim, and that this note was discounted by the bank after being given to his father.

For an excellent note collating decisions construing the usury laws pertaining to national banks, see 56 L. R. A. 673, 682. It is there also stated that on a usurious contract a national bank is entitled to interest on the principal sum recovered from the date of its judgment only.

We think, under the principles stated in the headnotes and in this opinion, that the court erred in directing a verdict for the plaintiff for the full amount sued for, and the judgment overruling the motion for new trial is

*Reversed. Broyles, P. J., and Bloodworth, J., concur.*