58504. KENNEDY v. BRAND BANKING COMPANY.

DEEN, Chief Judge.

This is a suit to recover an amount due on a promissory note plus interest and attorney fees.

The note sued upon was executed on April 14, 1977, in the amount of $40,000 with 10 percent per annum interest, payable on October 14, 1977. It was the sixth in a series of renewal notes on a note executed on February 19, 1974, for $50,000 bearing an 8 percent per annum interest rate, payable quarterly. (This note was renewed on February 18, 1975, at a 12 percent annual interest rate, the second note was renewed on February 19, 1976, at an 11 percent annual interest rate, the third note was renewed on May 27, 1976, at an 11 percent annual interest rate, the fourth note was renewed on July 23, 1976, at a 11 percent annual interest rate, the fifth note was renewed on December 13, 1976, at an 11 percent annual interest rate, and the sixth note was renewed by the April 14, 1977, note.) Kennedy brings this appeal from an order granting appellee's motion for summary judgment.

1. Appellant does not dispute his liability to the bank on the note, but contends that interest payments of $6,862.62 made on the renewal notes preceding the April 14, 1977, note were usurious and must be credited as principal against the outstanding balance of the note. (No interest payments were made on the last note.)

In ruling on the motion, the trial court held: "The burden of proving usury is upon the party making such allegation." While this rule would be true at the trial of this case under *Franco v. Bank of Forest Park,* 118 Ga. App. 700 (165 SE2d 593) (1968), on a motion for summary judgment the burden of proof is always placed upon the movant even as to those issues which the opposing party would have the trial burden. *Hip Pocket, Inc. v. Levi Strauss & Co.,* 144 Ga. App. 792 (242 SE2d 305) (1978). Thus, the ruling of the trial court was in error, but we will examine the record to see if appellee did in fact meet his burden of proof as to all issues involved in this case.

In February of 1974, when the first note was executed the maximum legal rate of interest on loans secured by real estate was 9 percent per annum. Code Ann. § 57-101.1 (Ga. L. 1970, p. 1974). When the note was renewed in February of 1975, a 12 percent annual interest rate would have been usurious under that Code section

and the usury would infect any renewal note for the debt. See *Hartsfield v. Watkins,* 67 Ga. App. 411 (20 SE2d 440) (1942). However, in 1974 Congress enacted Public Law 93-501, Title II, § 202, known as the "Brock Bill" which amended 12 USC § 1831a (a) to read as follows: "In order to prevent discrimination against State-chartered insured banks with respect to interest rates, if the applicable rate prescribed in this subsection exceeds the rate such State bank would be permitted to charge in the absence of this subsection, a State bank may in the case of business or agricultural loans in the amount of $25,000 or more, notwithstanding any State constitution or statute, which is hereby preempted for the purposes of this section, take, receive, reserve, and charge on any loan or discount made, or upon any note, bill or exchange, or other evidence of debt, interest at a rate of not more than 5 per centum in excess of the discount rate on ninety-day commercial paper in effect at the Federal Reserve bank in the Federal Reserve district where the bank is located, and such interest may be taken in advance, reckoning the days for which the note, bill, or other evidence of debt has to run." The provisions of this Act applied to ". . . any loan made in any State after the date of enactment of this title (October 29, 1974), but prior to the earlier of July 1, 1977, or the date (after the date of enactment of this title) on which the State enacts a provision of law which prohibits the charging of interest at the rates provided in the amendments made by this title." 12 USCA § 1831a note.

In *Green v. Decatur Federal Savings &c. Assn.,* 143 Ga. App. 368 (238 SE2d 740) (1977), this court has already determined that changes in Code Ann. §§ 57-101 and 57-101.1 (Ga. L. 1975, pp. 370, 153) did not repeal the provisions of Public Law 93-501.

Appellant argues that the legislative intent of 12 USCA § 1831a as revealed in 1974 U. S. Code Congressional and Administrative News, p. 6249, shows that this law was not meant to apply to loans made prior to its effective date. While we agree with this contention, we do not believe that a renewal note executed for a new consideration would violate the intent of Congress; 12 USCA § 1831a (a) expressly provides that it applies to ". . . any loan or discount made, or *upon any note,* bill or

exchange, or other evidence of debt. . ." made after October 29, 1974. (Emphasis supplied.) The second through seventh notes were all executed after the effective date of this law and meet the requirements for the type of indebtedness subject to its provisions. Appellant's reliance upon Arkansas Savings &c. Assn. v. Mack Trucks of Arkansas, 566 SW2d 128 (1978) is misplaced. The allegedly usurious note in that case was executed prior to the effective date of the statute. Here, the notes alleged to be usurious were executed after the effective date of the federal statute.

Appellant's contention that the trial court erred in finding that the loan was made for a business purpose and thus the provisions of 12 USCA § 1831a preempted the Georgia usury law is without merit. In his affidavit, he claimed that the loan " . . . was made as a personal investment." We agree with the trial court's holding; a loan made for the purpose of investing in real estate is unquestionably made for a business purpose.

Appellant argues that appellee failed to meet its burden of proving that the notes were not usurious. The court can take judicial notice of the Federal Reserve discount rate on ninety-day commercial paper that was in effect on the dates the notes were executed because the rates are published in the Federal Register. *Sims v. Southern Bell Tel. &c. Co.* 111 Ga. App. 363 (141 SE2d 788) (1965); 44 USCA § 1507. On February 18, 1975, the discount rate was 6.75% (40 F.R. 6769); on February 19, 1976, the discount rate was 5.50% (41 F.R. 4540); on May 27, 1976 the discount rate was 5.50% (41 F.R. 4540); on July 23, 1976, the discount rate was 5.50% (41 F.R. 4540); and on December 13, 1976, the discount rate was 5.25% (42 F.R. 52979). As the interest rate charged on the February 18, 1975 note was 12%, and the rate charged on four of the succeeding notes was 11%, these five notes were clearly usurious.

12 USCA § 1831a (b) provides: "If the rate prescribed in subsection (a) of this section exceeds the rate such State bank would be permitted to charge in the absence of this paragraph, and such State fixed rate is thereby preempted by the rate described in subsection (a) of this section, the taking, receiving, reserving, or charging a

greater rate of interest than is allowed by subsection (a), when knowingly done, shall be deemed a forfeiture of the entire interest which the note, bill, or other evidence of debt carries with it, or which has been agreed to be paid thereon. If such greater rate of interest has been paid, the person who paid it may recover in a civil action commenced in a court of appropriate jurisdiction not later than two years after the date of such payment, an amount equal to twice the amount of the interest paid from the State bank taking or receiving such interest."

As 12 USCA § 1831a (b) expressly provides that it preempts state usury laws, we find that the penalty provisions contained therein preempt any state statute which is in conflict. The penalty provision contained in 12 USCA § 1831a (b) is essentially the same as that found in 12 USCA § 86 which provides a penalty for usury on loans made by national banks. Any state statute in conflict with 12 USCA § 86 has been held to be preempted. First National Bank of Mena v. Nowlin, 509 F2d 872 (8th Cir. 1975); *Young v. First Nat. Bank of Covington*, 22 Ga. App. 58 (95 SE 381) (1918). We believe that this same rule applies to 12 USCA § 1831a (b). Although the note which is the subject matter of the suit in the instant case did not charge a usurious interest rate, the usurious interest rates on the five preceding renewal notes infect the sixth renewal note. *Young,* supra.

We find that the trial court erred in holding that the appellant had the burden of proving usury on the motion for summary judgment. Appellee, however, brought to this court's attention the Federal Reserve discount rates that were published in the Federal Register and admits that five of the notes carried usurious interest rates and we agree that the penalties provided under federal law must govern.

While the penalties provision in 12 USCA § 1831a (b) have not been interpreted, they are virtually identical with those imposed under 12 USCA § 86. Under that section the "taking, receiving, reserving, or charging" of a greater rate of interest than that permitted by law must be also "knowingly done" to constitute usury. When the contract shows on its face that the charge of greater rate of interest than the law allows, the intent is apparent.

Armstrong v. City Nat. Bank of Galveston, 16 SW2d 954 (1929), cert. den. 281 U. S. 737, 74 LE 1152. Therefore, we find that the bank must forfeit the entire amount of interest the note carries with it. Appellant cannot set-off the amount of usurious interest paid against the principle balance as permitted under state law, *Thomas v. Estes,* 139 Ga. App. 738 (229 SE2d 538) (1976), because his only remedy under the federal law is to bring suit against the bank to recover twice the amount of usurious interest paid within two years after payment.

2. There is no evidence in the record to support appellant's contention that the bank was required to foreclose upon the security and have the foreclosure confirmed before bringing suit upon the note. As there is no provision in the note requiring foreclosure before suit is brought on the note, this enumeration is without merit. *Wilson v. Citizens Bank of Peach County,* 143 Ga. App. 402 (238 SE2d 754) (1977).

3. We find no merit in appellant's enumeration of error contending that the trial court erred in granting appellee a special lien on the real property securing the note without first obtaining an order modifying the stay from the bankruptcy court. The record shows that appellee had an undivided one-fourth interest in the property secured by the note and that the pending bankruptcy is that of Preferred Land Corp. and does not involve appellee personally. While Preferred Land may own some part of the remaining undivided interest, an automatic stay under Rule 601 of Chapter X of the Bankruptcy Act does not prevent the trial court from granting a special lien as to that portion of appellant's undivided interest.

4. Appellant also contends that the trial court erred in granting appellee summary judgment by ruling there was no condition precedent as to the attorney fee provision in the note.

The attorney fee provision in all of the notes is identical. After setting forth the date, term of the note, amount of the loan, interest rate, a description of the collateral security, and authorization for sale of the security if the debtor defaults, it provides: "In case of deficiency, I promise to pay said bank the amount thereof,

with legal interest, forthwith after such sale, or if collected by an attorney at law ten per cent thereof as fees." Appellant argues that a foreclosure and deficiency are conditions precedent to a claim for attorney fees, and this condition has not occurred.

"The construction of a contract is a question of law for the court." Code Ann. § 20-701. A jury question arises only if the contract remains ambiguous after application of the rules of construction. Merely because two interpretations might be used in construing the contract it does not follow that the matter automatically becomes a jury question. *Holcomb v. Word,* 239 Ga. 847 (238 SE2d 915) (1977). "The construction which will uphold a contract in whole and in every part is to be preferred, and the whole contract should be looked to in arriving at the construction of any part." Code Ann. § 20-704 (4). "The cardinal rule of construction to be applied in the interpretation of contracts is to ascertain the intention of the parties." *Johnson v. U. S. Fidelity &c. Guaranty Co.,* 93 Ga. App. 336, 341 (91 SE2d 779) (1956). "Words generally bear their usual and common signification; but technical words, or words of art, or used in a particular trade or business will be construed, generally, to be used in reference to this peculiar meaning. The local usage or understanding of a word may be proved in order to arrive at the meaning intended by the parties." Code Ann. § 20-704 (2). "The rules of grammatical construction usually govern, but to effectuate the intention they may be disregarded; sentences and words may be transposed, and conjunctions substituted for each other. In extreme cases of ambiguity, where the instrument as it stands is without meaning, words may be supplied." Code Ann. § 20-704 (6). The bank argues that it is inconceivable that it intended that attorney fees be recoverable only when a deficiency judgment is collected by an attorney, but not recoverable when the entire outstanding balance of the note is collected by an attorney. We believe that the provisions in the note itself support this contention. Applying the rules of construction, we find that the phrase "or if collected by an attorney" does not refer to the deficiency. The "or" expresses an alternative (see *Webster's New International Dictionary,* 1966, p. 1585)

and refers to the promise to pay the bank, the words "the note," are implied after "or if," and "thereof" refers to the amount collected by an attorney. Therefore, it reads "or if [the note] is collected by an attorney at law, ten percent [of the amount collected by an attorney] is recoverable as attorney fees." The trial court did not err in ruling that a foreclosure and a deficiency were not a condition precedent to the recovery of attorney fees.

5. Appellant further contends that the award of attorney fees was error because the plaintiff's notice of intention to seek attorney fees did not satisfy the requirements of Code Ann. § 20-506. He argues that the letter failed to specify the amount claimed due or the amount that could be paid without incurring liability for attorney fees. After maturity of the obligation, Code Ann. § 20-506 (c) requires the holder of the note or his attorney to: "notify in writing the maker, indorser or party sought to be held on said obligation, that the provisions relative to payment of attorney's fees in addition to the principal and interest shall be enforced and that such maker, indorser or party sought to be held on said obligation has 10 days from the receipt of such notice to pay the principal and interest without attorney's fees. If the maker, indorser or party sought to be held on any such obligation shall pay the principal and interest in full before the expiration of such time, then the obligation to pay the attorney's fees shall be void and no court shall enforce the agreement."

In the present case, Kennedy was notified that he had executed a promissory note to the Brand Banking Company ". . . dated April 14, 1977, in the original principal amount of forty thousand and no/100 ($40,000.00) dollars . . . Said note is now in default . . ." "You are hereby given notice that lender has declared the entire outstanding indebtedness under the note . . . immediately due and payable. Unless the amounts due are paid in full within ten (10) days from the receipt of this letter, the provision for attorney's fees in the note will be enforced . . . and you will be required to pay such stipulated attorney's fees."

In *General Electric Credit Corp. v. Brooks,* 242 Ga. 109 (249 SE2d 596) (1978), the Supreme Court held that "substantial" compliance with Code Ann. § 20-506 (c) was

a condition precedent to the collection of attorney fees. In that case, the debtor was notified that he must pay a specified amount of principal and interest within ten days from the receipt of the letter in order to avoid attorney fees. We must, however, reject appellant's argument that this case requires disclosure of the amount of principal and interest that he must pay in order to meet the substantial compliance test. That issue is not addressed in *Brooks,* supra, and we believe that the present case is controlled by *Franco v. Bank of Forest Park,* 118 Ga. App. 700 (165 SE2d 593) (1968). An examination of the record in that case reveals that the debtor was informed that the attorney was writing to him ". . . on behalf of the Bank of Forest Park with reference to the indebtedness owed by you to it, as evidenced by the promissory note dated October 2, 1964 in the principal amount of $11,160," that the note was accelerated, and that he must pay the principal and interest within ten days from receipt of the notice in order to avoid payment of attorney fees. The debtor was not informed of the amount of principal and interest that he must pay in order to avoid payment of attorney fees. This court held that the notice ". . . fully complied with Code Ann. § 20-506, the terms of the note, and all other requirements." Id at 704. As the Supreme Court overruled the strict compliance test and cited *Franco,* supra, as following the line of cases which followed the strict compliance test, and the new test is not as strict as the one applied in *Franco,* supra, it is obvious that the notice letter must be held to be sufficient.

In summary, we find that the award of summary judgment in favor of the appellee must be affirmed in part and reversed in part. The trial court did not err in granting summary judgment as to the principal amount of the note, in awarding attorney fees and in granting a special lien on real property which was the security for the note. It erred, however, in awarding interest and permitting the interest to be included as a part of the ten percent of the outstanding indebtedness that could be recovered as attorney fees.

*Judgment reversed in part. Shulman and Carley, JJ., concur.*

Argued September 6, 1979 — Decided October 12, 1979 —

REHEARING DENIED OCTOBER 25, 1979 —

*J. C. Rary, Robert P. Hoyt,* for appellant.
*C. Wilson DuBose, Benita Baird, J. Lanier Meeks,* for appellee.