## 74689. COMPREHENSIVE BOOKKEEPING & ACCOUNTING, INC. et al. v. JOHN B. WOODWARD, INC.

### (364 SE2d 108)

BEASLEY, Judge.

John B. Woodward, Inc. sued Comprehensive Bookkeeping and Accounting, Inc. and Martin L. Van Winkle III to recover sums allegedly due under a promissory note executed by defendants in favor of plaintiff. Defendants denied the material allegations of the complaint and alleged that the note "was one of several documents entered into between the parties and a third party, and [that] one of the other documents entered into between the parties provided for a discharge of Defendants [under the promissory note] upon certain terms and conditions and [that] such terms and conditions occurred discharging Defendants."

The evidence at trial, construed in favor of the jury's verdict, was as follows: Comprehensive Accounting Corporation (CAC) provides a standardized accounting system, which includes data processing support and client referrals, to accountants and accounting firms. Plaintiff is a small accounting firm which provided services to its clients through CAC's accounting system. Plaintiff was capitalized in part by CAC through purchase money financing for accounts provided by CAC to plaintiff, and its assets were pledged as collateral for the financing.

In 1980 plaintiff's business was "marginal" and, by the latter part of 1980, it sought to sell its accounts, satisfy its debt to CAC and withdraw from operating. Plaintiff communicated its intentions to CAC and CAC brought plaintiff and defendants together to negotiate a sales agreement. In this regard, the parties entered into an agreement entitled, "ASSIGNMENT AGREEMENT, SETTLEMENT, REAFIRMATION OF POST-TERMINATION RESTRICTIVE COVENANTS, AND MUTUAL RELEASE" (the agreement), wherein plaintiff agreed to transfer its accounts to defendants in exchange for the following consideration: "8. *SETTLEMENT* Upon completion of the assignment contemplated herein, [defendants] shall pay [CAC] by notes acceptable to [CAC] the purchase price. . . . [Plaintiff does] hereby guarantee [defendants] that the value of the accounts will be at least $38,961.56 [plaintiff's debt to CAC] as of 30 April 1981. [CAC] agrees to limit the indebtedness due [CAC] by [plaintiff] to $38,961.56. [Defendants] agree to pay [plaintiff] directly by note in the sum of the account value above and beyond $38,961.56 . . . [CAC] shall cancel the notes of [plaintiff] . . . and release [plaintiff] of all the other amounts set forth . . . above, and release the mortgage, UCC financing statements, assignment of life insurance, stock pledge, and any other liens it may have on [plaintiff's] practice, realestate [sic] or other property."

The agreement further provided, in pertinent part: "18 *REFINANCING* [CAC] further agrees to assist [defendants] to secure reasonable and adequate refinancing for the balance of the indebtedness due [CAC] and [plaintiff] by [defendants] including such type financing to construct a prototype [CAC] type office building. . . . Such financing shall be completed before 1 May 1981. In the event that financing cannot be arranged before said date, this agreement may be extended between [CAC] and [defendants] for an additional 60 days upon written agreement between the two parties. In the event that said financing has not been completed by 1 July 1981, ownership of the accounts . . . shall be transferred to [CAC]. [Defendants] and [plaintiff] shall be relieved of all liabilities and [defendants] shall become the agent of [CAC] to process [and] protect [CAC's] accounts in its possession."

Pursuant to the agreement, plaintiff assigned its accounts to defendants and defendants executed a promissory note in favor of CAC for the amount of plaintiff's debt to CAC. Defendants also executed a promissory note in favor of plaintiff for the net value of plaintiff's accounts after deducting an amount equal to plaintiff's debt to CAC. Defendants failed to procure financing as provided in paragraph 18 of the agreement and refused to pay plaintiff its equity in the accounts.

The trial court denied defendants' motion for directed verdict, submitted the case to the jury and a verdict was returned in favor of plaintiff in an amount which was reduced so as not to exceed the amount of principal and interest due under the note. The appeal is from the judgment entered thereon.

1. Defendants first contend the trial court erred in failing to grant their motion for directed verdict because paragraph 18 of the agreement "clearly and unambiguously" required procurement of "refinancing" by defendants of their "indebtedness" to plaintiff and CAC as a condition of their liability to plaintiff under the promissory note. In other words, paragraph 18 provides a condition which would relieve both plaintiff and defendants of "all liabilities" under the agreement "[i]n the event that said financing has not been completed by 1 July 1981. . . ." On the other hand, plaintiff contends that this language is ambiguous and argues that a question of fact remained regarding the impact of paragraph 18 on defendants' liability to plaintiff under the note.

" 'The construction of a contract is a question of law for the court.' Code Ann. § 20-701 [now OCGA § 13-2-1]. A jury question arises only if the contract remains ambiguous after application of the rules of construction. Merely because two interpretations might be used in construing the contract it does not follow that the matter automatically becomes a jury question. *Holcomb v. Word*, 239 Ga. 847 (238 SE2d 915) (1977)." *Kennedy v. Brand Banking Co.*, 152 Ga.

App. 47, 53 (4), 53 (262 SE2d 177). The words of a contract generally bear their usual and common signification. OCGA § 13-2-2 (2).

Reading the entire instrument to arrive at the construction of the particular provision whose meaning is disputed, as we must pursuant to OCGA § 13-2-2 (4), there is an ambiguity which lends itself to resolution by a jury. Its meaning cannot be established as a matter of law by the court. For example, the assignment agreement states at the outset that the "Assignors do *hereby* assign, sell and transfer to Assignees those accounts hereafter identified and defined . . ." and "Assignors *hereby* transfer to Assignee any and all rights, tangible or intangible, economic or contractual to each account so defined. . . ." (Emphasis supplied.) These provisions introduce a current transfer.

The provision in dispute comes near the end of the lengthy agreement and is entitled "Refinancing." It could be construed as a side agreement between the assignee of the accounts, that is, the purchaser and the licensor CAC. In this context, the term "all liabilities" would relate to the liabilities purchaser and seller each owed to CAC, as it would be reasonable to conclude that the assignor/seller would have no liabilities to itself.

The lack of clarity is not filled by an application of the legal rules for the construction of contracts, with the result that the court did not err in denying the assignee/purchaser's motions for directed verdict and j.n.o.v. OCGA § 13-2-1; *Gans v. Ga. Fed. &c. Assn.*, 179 Ga. App. 660, 662 (347 SE2d 615) (1986).

2. The remaining enumerations establish no reversible error. As to certain rejected jury instructions requested by defendants on the subject of conditions precedent and subsequent, they were not material to the issues in the case. Even defendants admitted that it did not make a difference under the circumstances.

Appellants also complain that the court should not have given two of plaintiff's requests to charge. We do not find them in the record as such, and no objection was voiced during the charge conference. However, defendants' exception after the charge was given embraces them. If, in the absence of appellants' compliance with our Rule 15 (c) (3), we are correct in our identification of those portions of the charge to which appellants refer, and assuming that they are substantially what was requested by plaintiff, the charges do not require a new trial. *City Dodge v. Gardner*, 130 Ga. App. 502, 504-505 (2) (203 SE2d 729) (1973).

*Judgment affirmed. Birdsong, C. J., Deen, P. J., Banke, P. J., Carley, Sognier, Pope, and Benham, JJ., concur. McMurray, P. J., dissents.*

McMURRAY, Presiding Judge, dissenting.

" 'The construction of a contract is a question of law for the

court.' Code Ann. § 20-701 [now OCGA § 13-2-1]. A jury question arises only if the contract remains ambiguous after application of the rules of construction. Merely because two interpretations might be used in construing the contract it does not follow that the matter automatically becomes a jury question. *Holcomb v. Word*, 239 Ga. 847 (238 SE2d 915) (1977)." *Kennedy v. Brand Banking Co.*, 152 Ga. App. 47, 53 (4), 53 (262 SE2d 177). In light of this interpretation of OCGA § 13-2-1, I am compelled to dissent to the majority's finding that an ambiguity exists in the agreement which "lends itself to resolution by a jury."

After examining the entire agreement, as we must pursuant to OCGA § 13-2-2 (4), it is apparent that the object of the agreement is the sale of plaintiff's accounting practice to defendants and that paragraph 18 is an integral part of the sales transaction which provides a condition which would relieve plaintiff and defendants of "all liabilities" thereunder "[i]n the event that said financing has not been completed by 1 July 1981. . . ."

The majority's position that paragraph 18 of the agreement could be construed as a "side agreement" between defendants and CAC is not tenable as the record clearly indicates that CAC did not execute the agreement and is therefore not bound by the terms thereof. Under these circumstances, CAC is at best named in the agreement as an agent to assist defendants in obtaining financing for the purchase of plaintiff's accounting practice, not as a party to the sales transaction.

Even though paragraph 18 "comes near the end of the lengthy agreement," as noted by the majority, we cannot ignore the impact of this provision on the parties to the agreement. It is essential for the court to ascertain the intention of the parties from the plain language of the instrument and, where the language of the contract as a whole contravenes no rule of law, it should be given effect regardless of the unskillful manner in which it was prepared. See OCGA § 13-2-3; *Brooks v. Folds*, 33 Ga. App. 409 (1) (126 SE 554); and *Skinner v. Bearden*, 77 Ga. App. 325 (1) (48 SE2d 574).

The words of a contract generally bear their usual and common signification. OCGA § 13-2-2 (2). In the case sub judice, the subject of paragraph 18 is clearly the "refinancing for the balance of the indebtedness due [CAC] and [plaintiff] by [defendants]. . . ." From this perspective, it follows that the words, "[defendants] and [plaintiff] shall be relieved of all liabilities . . . ," includes defendants' liability to plaintiff under the promissory note. Consequently, since the language of the agreement unambiguously expressed a condition of payment under the promissory note held by plaintiff and since the undisputed evidence shows that this condition was not satisfied, the trial court erred in failing to grant defendants' motion for directed verdict.

DECIDED DECEMBER 4, 1987 —
REHEARING DENIED DECEMBER 18, 1987 — 

P. Kevin Walther, for appellants.
David R. Autry, for appellee.