### 59081. TRUST COMPANY OF GEORGIA BANK OF SAVANNAH, N. A. v. PORT TERMINAL & WAREHOUSING COMPANY.

CARLEY, Judge.

Appellee-Port Terminal instituted this action against the appellant-bank, alleging a conversion of some eighty-eight checks on which it was the named payee. Code Ann. § 109A-3—419 (1) (c). The bank appeals the grant of summary judgment to Port Terminal.

Prior to the events giving rise to the instant action for conversion, Port Terminal had in its employ one Maxine McElveen. Port Terminal discovered that Mrs. McElveen was stealing money and she was arrested. Port Terminal lost approximately $18,000 in Mrs. McElveen's scheme which involved manipulation of the company's bank deposits and forging its checks for deposit to her personal account. When Mrs. McElveen subsequently reimbursed her employer the criminal charges were dismissed.

Approximately three years later Port Terminal reemployed Mrs. McElveen. Her duties upon reemployment included picking up the mail, opening the envelopes and distributing the contents, including checks payable to the company, to the appropriate persons in the office. Port Terminal did not maintain an accounts receivable ledger. When payment from its customers was received, Port Terminal employees, including Mrs. McElveen, would stamp the office copy of an invoice as "Paid" and place it in a file. Beginning a short time after her reemployment and continuing for a two-year period, Mrs. McElveen gained possession of some eighty-eight checks payable to Port Terminal, forged the company's endorsement and that of its president, added her own endorsement and then deposited them into her personal checking account with the bank. The bank accepted these checks without questioning the validity of the endorsements and credited Mrs. McElveen's account accordingly. She would then mark the appropriate Port Terminal invoice "Paid" and transfer it to the "Paid Invoice" file.

Port Terminal had its checking account at another bank and received from it a monthly statement. The company had prepared each month an adding machine tape from the "Paid Invoice" file and this tape, check stubs and bank statements were furnished to the bookkeeper on a monthly basis. However, Mrs. McElveen somehow avoided detection until a copy of an invoice was found to be missing and the resulting inquiry exposed her.

After suit for conversion of the checks was filed and discovery made, Port Terminal moved for summary judgment. Its motion was originally denied but upon reconsideration, the trial court, relying on *National Bank of Ga. v. Refrigerated Transport Co.*, 147 Ga. App. 240 (248 SE2d 496) (1978), granted the motion.

1. "An instrument is converted when . . . it is paid on a forged indorsement." Code Ann. § 109A-3—419 (1) (c). The bank does not contend that the checks were not converted within the meaning of the Code. It did raise, however, certain defenses to the suit and the bank urges on appeal that, even though it would have the burden of proving those defenses at trial, on summary judgment the

burden of piercing the defenses was on Port Terminal and that that burden was not met. *Kennedy v. Brand Banking Co.,* 152 Ga. App. 47 (262 SE2d 183) (1979).

The bank first urges that the applicability of Code Ann. § 109A-3—404 (1) to the facts of the instant case required the denial of Port Terminal's motion for summary judgment. "Any unauthorized signature is wholly inoperative as that of the person whose name is signed unless he ratifies it or is precluded from denying it . . ." The bank argues that even though the forged endorsements on the checks are clearly "unauthorized signatures" (Code Ann. § 109A-1—201 (43)) Port Terminal would be "precluded" from denying that its endorsements were authorized. The basis for this argument is that Port Terminal's negligence in rehiring Mrs. McElveen after she had previously stolen checks and money from the company would estop it to deny the forged endorsements. The bank asserts that this defense is available to it under Code Ann. § 109A-3—404 (1) and is separate and distinct from the provisions of Code Ann. § 109A-3—406: "Any person who by his negligence substantially contributes to a material alteration of the instrument or to the making of an unauthorized signature is precluded from asserting the alteration or lack of authority against a holder in due course or against a drawee or other payor who pays the instrument in *good faith and in accordance with the reasonable commercial standards* of the drawee's or payor's business." (Emphasis supplied.) In short, the bank urges that it may assert the negligence of Port Terminal in fostering Mrs. McElveen's forgery scheme as a defense under Code Ann. § 109A-3—404 (1) without reference to its own "reasonable commercial standards" in accepting the checks under Code Ann. § 109A-3—406. We do not agree with the bank's interpretation of these two Code sections.

Code Ann. § 109A-3—404 does not, by its own terms, define what is meant by a "preclusion to deny" an unauthorized signature. It is clear, however, that within its meaning the pre-Uniform Commercial Code law of estoppel is operative. Code Ann. § 109A-1—103. Clearly, one's negligence may under the circumstances be a sufficient basis for estopping him to assert certain matters. *Brown v. Western Union Tel. Co.,* 39 Ga. App. 152

(147 SE 151) (1928). However, even though the UCC as adopted in Georgia preserves the pre-Code law of estoppel and negligence may be the basis for asserting an estoppel, we are of the opinion that the legislature has modified the doctrine of estoppel by negligence in the commercial paper context through enactment of Code Ann. § 109A-3—406. Thus, when one who has paid an instrument asserts that another is estopped by his negligence from denying that an unauthorized signature on an instrument operates as his own, Code Ann. § 109A-3—404 (1), the payor himself must have paid in good faith and in accordance with the reasonable commercial standards of his business. Code Ann. § 109A-3—406. Absent this demonstration of the payor's good faith and adherence to reasonable commercial standards, the payor may not assert that another's negligence substantially contributed to the making of his unauthorized signature and that he is thereby precluded from denying that the signature does not operate as his own. In short, Code Ann. § 109A-3—404 (1) does *not* establish a separate and distinct estoppel by negligence defense for a payor who pays an instrument over a forged endorsement. "The concept of 'precluded' [under Code Ann. § 109A-3—404 (1)] embraces both estoppel to deny the agency [of the endorser] and liability based upon neglect *as governed by Code [Ann. § 109 A-3-406]*." (Emphasis supplied.) 2 Anderson, Uniform Commercial Code 922, § 3-404:4 (2d Ed. 1971). When a payor seeks to estop or preclude another from asserting that his signature on an instrument is forged under Code Ann. § 109A-3—404 (1) and the basis for asserting this estoppel or preclusion is the neglect of the one whose "signature" appears, Code Ann. § 109A-3—406 controls. Thompson Maple Pro., Inc. v. Citizens Nat. Bank, 234 A2d 32 (Pa. Super. 1967).

Having determined that Code Ann. §§ 109A-3—404 (1) and 109A-3—406 must be read together, we turn to the more difficult question of whether Port Terminal has "pierced" the bank's defense based thereon. Port Terminal argues that it has done so by demonstrating that the bank did not, as a matter of law, pay the checks in question in accordance with the reasonable commercial standards of its business. On this basis, Port Terminal

urges that the bank's defense that the company's negligence substantially contributed to the forging of its endorsements is not available. It is clear that Code Ann. § 109 A-3—406 provides for such counter-estoppels, 2 Anderson, Uniform Commercial Code 941, § 3-406:5 (2d Ed. 1971), and if the evidence demonstrates the bank's lack of adherence to reasonable commercial standards in paying the checks, Port Terminal's negligence may not be asserted by the bank. In concluding that this defense was not available to the bank Port Terminal and the trial court relied on *National Bank of Ga. v. Refrigerated Transport Co.,* 147 Ga. App. 240, supra. In that case, this court, reviewing the grant of judgment n.o.v. to the payee of checks which were deposited to the account of the payee's agent, held: " 'The indorsements were irregular enough on their face to raise some question as to their validity; and certainly when the checks were offered for deposit into the general corporate checking account of one not the payee, [the bank] had a duty to inquire to ascertain the authority of [the agent] to indorse and deposit [the principal's] checks. [The bank] could not escape its duty of inquiry by relying on the word of its customer, [cit.]; nor does the fact that [the bank] could proceed against its customer under the warranty provisions of Ga. Code §§ 109A-3—417 and 109A-4—207 absolve it of the obligation of inquiry, [cit.].

"Therefore, failure to inquire into the validity of the indorsements in question precluded [the bank] from asserting the defense of commercial reasonableness ... as a matter of law.' " *National Bank of Ga.,* supra at 245. Port Terminal and the trial court interpreted our decision in *NBG* as standing for the proposition that it is commercially unreasonable as a matter of law for a bank to credit its customer's account with the proceeds of a third party check without first inquiring into the validity of the endorsements. We believe this is a misinterpretation of *NBG.*

In *NBG* the jury had returned a verdict which represented a finding that the bank had acted in good faith and according to reasonable commercial standards. The effect of the trial court's grant of the payee's motion for judgment n.o.v. and this court's affirmance was merely to hold that that verdict was without evidence to support it.

Cf. *Womack v. St. Joseph's Hospital,* 131 Ga. App. 63 (205 SE2d 72) (1974). The holding in *NBG* is that the bank had failed to produce evidence which would support the jury's finding that it had acted with commercial reasonableness. This is, in our opinion, far different from holding that mere evidence of the failure to inquire into the validity of the endorsements on third party checks without more meets Port Terminal's burden on summary judgment of showing such commercial unreasonableness as to estop the bank from asserting in its defense the possible negligence of Port Terminal in the forgeries. Reasonable commercial standards and whether those standards have been met under the circumstances are, in the first instance, questions of fact. Parsons Travel, Inc. v. Hoag, 570 P2d 445 (Wash. App. 1977). We decline to adopt a rule which would make the mere failure to check the validity of ostensibly valid endorsements on third party checks commercially unreasonable as a matter of law. "A single branch of a large bank . . . may handle several thousand instruments bearing third party indorsements in a single day. Considering this burden, it would be commercially unreasonable to expect payor banks to undertake foolproof efforts to verify ostensibly valid indorsements." Cooper v. Union Bank, 507 P2d 609, 620 (Calif. 1973). We believe the true rule is whether a reasonable man in accordance with reasonable commercial standards would be put on notice of some impropriety appearing either from the form of the instrument and its endorsements or from knowledge of facts outside the instrument itself. 2 Anderson, Uniform Commercial Code 941, § 3-406:5 (2d Ed. 1971). Here, unlike those in *NBG,* the endorsements may not be "so irregular on their face" as to raise questions as to their validity. *Thornton & Co. v. Gwinnett Bank &c. Co.,* 151 Ga. App. 641 (260 SE2d 765) (1979). The checks did not contain a restrictive endorsement. Compare Salsman v. National Community Bank, 246 A2d 162 (N. J. 1968). Nor did they contain an "improper" endorsement. Compare Seattle-First Nat. Bank v. Pacific Nat. Bank, 587 P2d 617 (Wash. App. 1978). Nor were they "cashed" but were rather accepted for deposit by the bank into the account of its customer. Compare Gresham State Bank v. O and K Const. Co., 370 P2d 726 (Or. 1962).

Furthermore, here unlike *NBG*, there is clear evidence which would authorize a finding that Port Terminal "substantially contributed" to the forgery of its endorsement on the checks by rehiring Mrs. McElveen and reinstating her in a position which would again expose itself to her forgeries. "[Code Ann. § 109A-3—406] extends . . . to cases where the party has notice that forgeries of his signature have occurred and is negligent in failing to prevent further forgeries by the same person." 2 Anderson, Uniform Commercial Code 939, § 3-406:1 (2d Ed. 1971). While it is clear that Port Terminal's negligence in this regard will not preclude it from asserting the forgery if the bank failed to use reasonable commercial standards in accepting the checks for deposit to the account of one other than the named payee, where Port Terminal has demonstrated only that the bank failed to verify ostensibly valid endorsements, we do not believe the company has met its summary judgment burden. "The plaintiff in a case like this should not recover as to any checks which were paid as a result of its negligence or failure to discover what a reasonable examination of its bank statements would have shown, unless the bank failed to use reasonable care, or to follow reasonable banking standards, in accepting the checks for deposit to the accounts or persons other than the named payee. In determining whether the bank has acted reasonably the trier of fact may, of course, assess the reasonableness of its conduct in light of plaintiff's conduct. Thus, *where there is some evidence of negligence on the part of both parties, the case is for the jury."* (Emphasis supplied.) Transamerica Ins. Co. v. United States Nat. Bank, 558 P2d 328, 335 (Or. 1976).

For the reasons discussed above, summary judgment was erroneously granted. There remain genuine issues of material fact, to wit, whether the bank accepted the checks in accordance with reasonable commercial standards and, if so, whether Port Terminal was negligent and substantially contributed to the forgery of its checks. If, at trial, the bank meets its burden of showing its adherence to reasonable commercial standards in dealing with the checks and of presenting evidence of Port Terminal's negligence, the jury would be authorized to

find that Port Terminal is precluded from denying its forged endorsements under Code Ann. §§ 109A-3—404 and 109A-3—406 and that there can be no recovery against the bank for conversion under Code Ann. § 109A-3—419 (1) (c). On the evidence before us, Port Terminal has not shown the bank's commercial unreasonableness so as to estop this defense and is not entitled to judgment as a matter of law.

2. The bank also raised as a defense to Port Terminal's action the applicable provisions of Code Ann. § 109A-3—419 (3): "[A] depository or collecting bank, who has in good faith and in accordance with the reasonable commercial standards applicable to the business of such representative dealt with an instrument or its proceeds on behalf of one who was not the true owner is not liable in conversion or otherwise to the true owner beyond the amount of any proceeds remaining in his hands." The trial court found this defense had been pierced by the evidence that the bank had not inquired into the validity of the endorsements and that this was, as a matter of law, commercially unreasonable. For the reasons discussed in Division 1 of this opinion the evidence before us does not demonstrate the bank's failure to adhere to reasonable commercial standards as a matter of law. It, therefore, follows that the trial court erroneously granted summary judgment by ruling that the bank's Code Ann. § 109A-3—419 (3) defense was unavailing. Cf. *Price v. B-Line Systems, Inc.*, 129 Ga. App. 34 (3) (198 SE2d 328) (1973); *Stratton & McLendon, Inc. v. Cameron-Brown Co.*, 140 Ga. App. 430 (231 SE2d 447) (1976). The viability of this defense cannot be determined without the resolution of genuine issues of material fact.

*Judgment reversed. Quillian, P. J., and Shulman, J., concur.*

ARGUED JANUARY 7, 1980 — DECIDED FEBRUARY 20, 1980 — REHEARING DENIED MARCH 6, 1980 —

*John M. Tatum,* for appellant.
*W. Brooks Stillwell, III,* for appellee.