**COULTER ELECTRONICS, INC.,**
**Plaintiff-Appellant,**

v.

**COMMERCIAL BANK OF COBB COUNTY, Defendant-Appellee.**

No. 83–8157.

United States Court of Appeals,
Eleventh Circuit.

March 23, 1984.

Robert B. Wedge, Atlanta, Ga., for plaintiff-appellant.

Robert J. Grayson, Marietta, Ga., Robert O. Fleming, Jr., Atlanta, Ga., for defendant-appellee.

Before JOHNSON and ANDERSON, Circuit Judges, and TUTTLE, Senior Circuit Judge.

PER CURIAM:

Appellant Coulter Electronics Inc. sued the Commercial Bank of Cobb County alleging the conversion of checks made payable to Coulter. The case, involving Commercial's culpability for crediting Coulter's checks to an unauthorized account of a Coulter employee, was tried before a jury and a verdict was rendered for Commercial. Coulter appeals the denial of its motions for directed verdict and judgment notwithstanding the verdict. We affirm.

I.

Coulter Electronics, Inc. is a corporation engaged in selling and servicing medical equipment throughout the country. It has an office in Marietta, Georgia. In June 1980, Rodney Binette, an employee of Coulter, opened a sole proprietorship account at Commercial Bank in the name of Coulter Electronics. Coulter did not authorize the opening of the account. Binette then began to deposit checks belonging to the corporation in his account. The checks, generally made payable to "Coulter Electronics,

Inc."[1] were accepted by Commercial Bank upon a stamped endorsement reading "For Deposit Only, Coulter Electronics, 03–062693–01." A total of $115,681.76 of Coulter checks were thus converted.

Coulter brought this diversity suit in federal court against the various defendants[2] for the conversion of its checks. As against Commercial Bank, Coulter alleged that its actions in opening the account and crediting the checks to it were "reckless and with a total disregard for their consequences." At trial, Coulter established a conversion of the checks under Official Ga.Code Ann. § 11–3–419(1)(c) (1982) ("An instrument is converted when ... it is paid on a forged endorsement."). Commercial defended itself by alleging that it acted "in good faith and in accordance with reasonable commercial standards."[3]

At the close of trial, Coulter moved unsuccessfully for a directed verdict and, after the jury found for Commercial Bank,[4] sought a judgment notwithstanding the verdict. It asserts the same arguments on appeal, specifically (1) that Commercial's acceptance of checks with forged endorsements established, as a matter of law, that it did not act in a commercially reasonable manner; and (2) that the evidence was in-

sufficient to show that Commercial acted reasonably.[5]

## II.

### A. Was Commercial Bank's Conduct Unreasonable As a Matter of Law?

Coulter asserts that when Commercial accepted checks made payable to "Coulter Electronics, Inc." upon endorsements reading simply "Coulter Electronics," it behaved unreasonably as a matter of law and therefore could not assert a defense of commercial reasonableness. Coulter relies principally on *National Bank of Georgia v. Refrigerated Transport Co.,* 147 Ga.App. 240, 248 S.E.2d 496 (1978), in which the Georgia court upheld a grant of judgment n.o.v. to a party that had sued a bank for converting checks with unauthorized endorsements.[6]

In *National Bank of Georgia,* the appellate court adopted trial court findings which held that the forgeries accepted by the bank were so obvious that it was barred from asserting a defense of commercial reasonableness. Subsequent cases have, however, explicitly modified this apparent legal conclusion. In *Thornton & Co. v. Gwinnett Bank & Trust Co.,* 151 Ga.App. 641, 260

1. Some of the checks were made payable simply to "Coulter Electronics." On appeal, Coulter only contests the judgment as to the checks made out to "Coulter Electronics, Inc."

2. Prior to trial, default judgments were entered against defendants Robert Potter and Viola Richards. A third defendant, First Bank and Trust Company, settled with Coulter before trial.

3. Official Ga.Code Ann. § 11–3–419(3) (1982) allows a bank that has acted "in good faith and in accordance with reasonable commercial standards" in accepting proceeds of a forged instrument to limit its liability for conversion to the amount of such proceeds remaining in its hands. Because all the money had been removed from the Coulter account before trial, this defense could serve as a complete bar to any liability on Commercial's part.

4. The jury specifically found, by means of a special interrogatory, that Commercial Bank acted "in good faith and in accordance with the reasonable commercial standards."

5. Coulter actually asserts that Commercial Bank's activities did not meet its duty to act in *good faith* and in accordance with reasonable commercial standards. "Good faith" and reasonableness are separate requirements of Official Ga.Code Ann. § 11–3–419(3) and both must be met to support the bank's defense. *National Bank of Georgia v. Refrigerated Transport Co.,* 147 Ga.App. 240, 248 S.E.2d 496, 499 (1978). Because there is no evidence suggesting a lack of "good faith" on Commercial Bank's part, we only consider whether the actions Coulter complains of demonstrate a lack of "commercial reasonableness."

6. The improper endorsements in *National Bank of Georgia* were very noticeable. A collection agency, United Account Systems, obtained checks payable to Refrigerated Transport Co. and deposited them into its own corporate checking account. Several types of endorsements were used on the checks: one was stamped "For deposit to the account of UAS" and several others were stamped with typewritten or handwritten labels suggesting that UAS was an agent for RTC.

S.E.2d 765 (1979), the court held that a bank could raise the commercial reasonableness defense, despite the presence of irregular endorsements on checks it accepted for deposit. In *Trust Co. of Georgia Bank v. Port Terminal & Warehousing Co.*, 153 Ga. App. 735, 266 S.E.2d 254 (1980), the court limited *National Bank of Georgia* to its facts and interpreted the grant of judgment n.o.v. in that case as relating to the inadequacy of the bank's evidence on commercial reasonableness rather than a ruling that it could not, as a matter of law, plead the reasonableness defense. The court in *Trust Co. of Georgia Bank* concluded as follows:

Reasonable commercial standards and whether those standards have been met under the circumstances are, in the first instance, questions of fact.... We believe the true rule is whether a reasonable man in accordance with reasonable commercial standards would be put on notice of some impropriety appearing either from the form of the instrument and its endorsements or from knowledge of facts outside the instrument itself.

266 S.E.2d at 258.

■ In this case, where the variance between the payee and the endorsement was so small,[7] it was not error for the district court to reject Coulter's contention that Commercial Bank's acceptance of the checks was, as a matter of law, commercially unreasonable.

**B. *Was There Sufficient Evidence to Support Commercial Bank's Claim That It Acted Reasonably?***

Coulter moved for directed verdict and judgment n.o.v. on the additional ground that the uncontradicted evidence failed to support the jury's verdict that Commercial Bank acted reasonably in accepting checks with improper endorsements for deposit. The standard in the circuit for ruling on such motions was discussed in *Boeing Co. v. Shipman*, 411 F.2d 365 (5th Cir.1969),[8]

On motions for directed verdict and for judgment notwithstanding the verdict, the Court should consider all of the evidence—not just that evidence which supports the non-mover's case—but in the light and with all reasonable inferences most favorable to the party opposed to the motion. If the facts and inferences point so strongly and overwhelmingly in favor of one party that the Court believes that reasonable men could not arrive at a contrary verdict, granting of the motion is proper. On the other hand, if there is substantial evidence opposed to the motions, that is, evidence of such quality and weight that reasonable and fair-minded men in the exercise of impartial judgment might reach different conclusions, the motions should be denied, and the case submitted to the jury.

*Id.* at 374.

There was substantial testimony before the jury that Commercial Bank's actions were commercially reasonable. While the presence of conflict in the testimony does suggest that the jury could have resolved the ultimate question in a different way, we do not believe that the evidence was so one-sided as to compel the grant of a directed verdict or a judgment n.o.v.

For the foregoing reasons, the jury verdict in Commercial Bank's favor is

AFFIRMED.

---

7. We do not here need to address whether certain variances might be so notable as to require that bank officials inquire into their validity.

8. In *Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir.1981) (en banc), this court adopted as binding precedent all of the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981. *Id.* at 1209.