Dorothy **HELMS**, Administrator for the Estate of Annie Fain and William Fain, Plaintiff,

v.

**WAL–MART STORES, INC., Defendant.**

**Civ. No. 1:91–cv–1532–JEC.**

United States District Court, N.D. Georgia, Atlanta Division.

Sept. 4, 1992.

Dorothea L. Russell, Thomas F. Tierney, Decatur, Ga., for plaintiff.

Howard M. Lessinger, Atlanta, Ga., for defendant.

ORDER

CARNES, District Judge.

This case is presently before the Court on the defendant's Motion for Summary Judgment [19–1]. The Court has reviewed the record and the arguments of the parties and, for the reasons set out below,

concludes that the defendant's Motion for Summary Judgment should be GRANTED.

## A. FACTUAL BACKGROUND

### 1. Undisputed facts

Based on the parties' statements of undisputed material facts and responses thereto, viewing all evidence and factual inferences in a light most favorable to the non-moving party, the following facts emerge as undisputed. On December 9, 1989, Ms. Dorothy Helms, a plaintiff in this case,[1] drove her eighty year-old mother, Ms. Annie Fain, to the K–Mart store to shop for pistachio nuts. While they were inside K–Mart, it started snowing. (Helms deposition, pp. 6, 59). The plaintiff and her mother then decided to drive to a Wal–Mart store. During their twenty minute drive to Wal–Mart, it began snowing harder and, as they arrived at Wal–Mart, the snow was accumulating in the parking lot, where they parked in a handicapped parking space.[2] (Helms deposition, pp. 65, 70).

As the plaintiff and her mother walked through the parking lot to the store the snow continued, turning somewhat to rain. (Helms deposition, p. 70–71). Approaching the store, the two women walked through the doors of Wal–Mart at about the same time as five or six other people. (Helms deposition, p. 71). They walked through an outer door which opened automatically, crossed a foyer area, and passed through an interior entrance door, as they hurried to get inside the store. (Helms deposition, pp. 73, 86–87). A step or two in front of her mother, with her back turned to her, (Helms deposition, p. 75), the plaintiff heard a noise and turned around to see that her mother had fallen. (Helms deposition, p. 78).[3]

During the morning, customers had been walking into the store, bumping their umbrellas onto the floor to remove the excess water. (Quinn deposition, p. 44). Accordingly, the greeter at the door of the Wal–Mart, Ms. Ola Quinn, had been dry-mopping the floor during the morning. If the mop became wet while she mopped, she would wring it out in a bucket. (Quinn deposition, p. 44). Ms. Quinn had just finished dry-mopping the floor when the plaintiff and Ms. Fain arrived.[4] (Quinn deposition, p. 43).

**1.** The plaintiffs include, Ms. Helms, who is suing as the Administrator of her mother's estate, and William Fain, the deceased's husband. Hereinafter, the term "plaintiff" refers to Ms. Helms.

**2.** Ms. Fain had a handicapped sticker because of her bad eyesight and cataracts. (Helms deposition, pp. 20, 66, 68).

**3.** Because the plaintiff did not see her mother fall, the plaintiff concedes that she does not have personal knowledge of what caused the fall (Helms deposition, p. 76), although the plaintiff stated that she had seen some water on the floor when she walked in the store. (Helms deposition, p. 76). Given the plaintiff's testimony that she saw water on the floor, the court will assume, for purposes of the motion for summary judgment, that Ms. Fain fell on water on the floor, as opposed to falling as a result of dizziness, a disorder from which she had suffered before (Helms deposition pp. 18–19, 33, 44, 53). Indeed, Ms. Fain had suffered numerous health problems prior to the incident that is the subject of this claim. At the time of her fall, she was taking heart and thyroid medication and a daily dose of two milligrams of a "nerve tablet," Ativan. (Helms deposition, p. 55). She had a pacemaker, and she had been a diabetic for approximately 30 or 35 years. (Helms deposition, pp. 22, 23). In 1988, she was admitted to the hospital complaining of dizziness, and in November, 1989, Ms. Fain's son had to catch her when she fell at home while having a dizziness spell. (Helms deposition, pp. 36, 47). When the paramedics came to Wal–Mart, Ms. Fain told them about her cardiac problems, diabetes, and previous cerebral conditions. (Stephen affidavit, p. 2).

**4.** In its Statement of Material Facts As To Which There Is No Genuine Issue To Be Tried [# 19] [hereinafter Defendant's Statement of Facts], para. 7, the defendant avers that the Wal–Mart greeter had both a wet mop and bucket and a dry mop and had just finished dry mopping the entrance to the store before the fall. Plaintiffs deny that allegation, stating that there were no mops at the entry of the store and there was a puddle of water where Ms. Fain fell. (# 26, Plaintiffs' Response To Defendant's Statement of Material Facts as To Which There Is No Genuine Issue To Be Tried, [hereinafter Plaintiffs' Response] Para. 7).

Plaintiffs base their assertion that there were no mops at the entry of the store on plaintiff's response of "I don't remember," to a question asked of her in deposition as to whether she had seen someone with a mop and bucket when

### 2. Mats and Warning Signs

In both parties' briefs, there is discussion concerning the existence, and legal significance of the existence, of mats. The testimony of Wal–Mart employees is uncontroverted that there were mats in the *vestibule/foyer* area of the store. (Anderson deposition, p. 12; Coffin deposition, p. 25).[5] The testimony is in dispute as to the existence of mats at the *inside* entrance to the store, however. Although Wal–Mart employees all agree that the inside mats were there—(Quinn deposition, p. 42, Anderson deposition, p. 12; Coffin deposition, p. 26)— the plaintiff states emphatically that there were no mats at the inside entrance (Helms deposition, p. 86).

Although it appears that the existence of mats in the *vestibule-foyer* area is not in dispute, because defendant did not notice the existence of mats at that area in Defendant's Statement of Facts, and indeed argues that the question of mats has no factual or legal significance in this case [# 28–2], the court does not include that factor in its own listing of material facts not in dispute.

With regard to the existence of signs warning of wet floor conditions [wet floor signs], the defendant has noticed that as a fact not in dispute. (Defendant's Statement of Facts, para. 6). All of the Wal–Mart employees who remembered the incident testified that the signs were on the doors entering the store and a standing sign was near the door. (Coffin deposition, p. 40; Anderson deposition, p. 21). Moreover, Ms. Quinn testified that she put up the signs that morning because she was aware of the bad weather. (Quinn deposition, p. 38).

Plaintiffs have denied this allegation. (Plaintiffs' Response para. 6). It is not clear whether, in her deposition testimony, plaintiff is asserting affirmatively that there were no warning signs or merely that she did not see any warning signs (Helms deposition, p. 72). Notwithstanding the consistent testimony of the employees, the court will draw all inferences in favor of the non-moving party and, for purposes of this motion, assume that the signs were not present. *Rollins v. TechSouth, Inc.,* 833 F.2d 1525, 1529 (11th Cir.1987).

## B. DISCUSSION

### 1. The Standard for Summary Judgment

Summary judgment is not properly viewed as a device that the trial court may, in its discretion, implement in lieu of a trial on the merits. Instead, Rule 56 of the Federal Rules of Civil Procedure *mandates* the entry of summary judgment against a party who fails to make a showing sufficient to establish the existence of *every* element essential to that party's case on which that party will bear the burden of

---

entering the store (Helms deposition, p. 77), as well as to plaintiff's averment of the fact that there was a puddle of water at the time her mother fell.

The court agrees with the defendant that this denial does not put the matter in dispute. First, plaintiff's cited testimony does not support an assertion that there were no mops. Second, even had plaintiff affirmatively remembered that she had seen no mops—at a time when she was hurrying to get indoors out of inclement weather and trying to help her fallen, elderly mother—this negative recollection would not have called into dispute the defendant's unequivocal testimony that Ms. Quinn had been mopping and had just finished mopping immediately before the plaintiff and her mother entered the store.

Further, the fact that there *may* have been a puddle of water at the time Ms. Fain fell does not call into dispute the uncontested testimony of Ms. Quinn that she had just finished mopping, particularly when plaintiff has conceded that she and her mother were entering the store at the same time that other customers were entering from the same snowy, wet outdoor conditions.

Plaintiffs have produced no affidavits or depositions to dispute defendant's uncontroverted testimony that the defendants mopped shortly before the plaintiff and Ms. Fain arrived, and therefore, the court will consider the defendant's assertion to be undisputed. See text, *infra* at 7–8.

5. The reasonable construction of Ms. Helms deposition testimony is that she did not remember whether there were mats at the vestibule/foyer entry to the store, as contrasted with her emphatic memory that there were no mats inside the store. (Helms deposition, pp. 86–87). See also Plaintiff's Response, Exhibit D, Helms Affidavit, Paragraph 9, in which plaintiff indicates only that there were no mats *inside* the store.

proof at trial. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). In such a situation, there can be no genuine issue as to any material fact, as a complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial. *Id.* at 322–23, 106 S.Ct. at 2552–53.

The movant bears the initial responsibility of asserting the basis for his motion. *Celotex,* 477 U.S. at 323, 106 S.Ct. at 2553; *APCOA, Inc. v. Fidelity National Bank,* 906 F.2d 610, 611 (11th Cir.1990). However, the movant is not required to negate his opponent's claim. The movant may discharge his burden by merely " 'showing'— that is, pointing out to the district court— that there is an absence of evidence to support the non-moving party's case." *Celotex,* 477 U.S. at 325, 106 S.Ct. at 2554. After the movant has carried his burden, the non-moving party is then required to "go beyond the pleading" and present competent evidence [6] designating "specific facts showing that there is a genuine issue for trial." *Id.* at 324, 106 S.Ct. at 2553. While the court is to view all evidence and factual inferences in a light most favorable to the non-moving party, *Samples v. City of Atlanta,* 846 F.2d 1328, 1330 (11th Cir. 1988), "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247–48, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986) (emphasis in original).

A fact is material when it is identified by the controlling substantive law as an essential element of the non-moving party's case. *Id.* at 248, 106 S.Ct. at 2510. An issue is genuine when the evidence is such that a reasonable jury could return a verdict for the nonmovant. *Id.* at 249–50, 106 S.Ct. at 2510–11. The nonmovant "must do more than simply show that there is some metaphysical doubt as to the material facts.... Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.' " [7] *Matsushita Electric Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586–87, 106 S.Ct. 1348, 1355–56, 89 L.Ed.2d 538 (1986). An issue is not genuine if it is unsupported by evidence, or if it is created by evidence that is "merely colorable" or is "not significantly probative." *Anderson,* 477 U.S. at 249–50, 106 S.Ct. at 2510–11. Thus, to survive a motion for summary judgment, the non-moving party must come forward with specific evidence of *every* element material to that party's case so as to create a genuine issue for trial.

## 2. Georgia Case Law

In arguing for summary judgment, the defendant has cited to a long line of Georgia authority. In reply, the plaintiffs have cited to a few cases that appear inconsistent with the lengthy authority that otherwise strongly favors the defendant's position. Given the seeming difficulty in reconciling this authority, a court might deem it preferable to deny the motion for summary judgment and try the case to a jury, with the notion that the jury's decision could obviate the need for the court to determine

**6.** The non-moving party may meet its burden through affidavit and deposition testimony, answers to interrogatories, and the like. *See Ross v. Bank South,* 837 F.2d 980, 999 (11th Cir. 1988). However, the mere verification by affidavit of one's own conclusory allegations is not sufficient to oppose a motion for summary judgment. *Fullman v. Graddick,* 739 F.2d 553, 557 (11th Cir.1984). Likewise, "[w]hen a party has given clear answers to unambiguous questions which negate the existence of any genuine issue of material fact, that party cannot thereafter create such an issue with an affidavit that merely contradicts, without explanation, previously

given clear testimony." *Van T. Junkins & Assoc. v. U.S. Industries,* 736 F.2d 656, 657 (11th Cir. 1984).

**7.** This standard mirrors the standard for a judgment as a matter of law (previously called a directed verdict) at trial. The question under each is the same: "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson,* 477 U.S. at 250–52, 106 S.Ct. at 2511–12.

which line of authority should govern the case. Yet, such a course likely would not render unnecessary the need to grapple with the Georgia law here, inasmuch as the court would expect the defendant to move for judgment as a matter of law at trial. Moreover, Rule 56 of the Federal Rules of Civil Procedure does not merely allow, but *mandates,* the entry of summary judgment in cases in which it is appropriate. *Celotex,* 477 U.S. at 323, 106 S.Ct. at 2553.

Accordingly, this court has carefully analyzed the somewhat conflicting Georgia authority in order to determine the appropriate principles of Georgia law that should govern this motion for summary judgment. Applying Rule 56 of the Federal Rules of Civil Procedure, as well as the applicable substantive law of the governing state jurisdiction, this court finds that summary judgment is appropriate.

Georgia has a long history of cases on rainy day slip and falls. The Georgia cases have held that a merchant is not the insurer for his customers for all injuries that they suffer on his property. *E.g., Gibson v. Consolidated Credit Corp.,* 110 Ga.App. 170, 138 S.E.2d 77 (1964). The cases hold that the basis of liability in a slip and fall case is the proprietor's superior knowledge of a perilous condition; yet, when it is raining, the customer and the proprietor have equal knowledge that the floor near the door may be wet from customers tracking in water, thereby precluding recovery in many rainy day slip and fall cases. *E.g., Gibson,* 110 Ga.App. at 174, 138 S.E.2d 77.

In *Gibson,* the archetypal case in this area, the court held that the duty of a merchant is only to protect others against an unreasonable risk of harm. Upholding summary judgment for the defendant in a case in which the plaintiff had fallen when she walked into the defendant's store while it was drizzling outside, the court held that the plaintiff should have known that the floor could be wet and that the store did not have knowledge of the wet conditions that was superior to the plaintiff. 110 Ga.App. at 179, 138 S.E.2d 77. The court noted, "[e]verybody knows that, when people are entering a building when it is rain-

ing, they will carry some moisture on their feet, which renders the floor near the door on the inside damp to some extent ..." *Id.* at 173, 138 S.E.2d 77.

The court of appeals again upheld summary judgment for a defendant in a rainy day slip and fall case in *Key v. J.C. Penney Co., Inc.,* 165 Ga.App. 176, 299 S.E.2d 895 (1983), in which it held that the store had exercised due care even though it had no mats by the door, because customers have knowledge that their shoes may be wet and that they may track in water. The court stated:

> The mere failure to remove water collecting near the entranceway of a large store because of the constant passing in and out of pedestrians during such a period of rain, and the failure to place mats in the aisle at such a place would not be evidence of a lack of reasonable care for the safety of the store's invitees ...

*Id.* (quoting *Gibson,* 110 Ga.App. 170, 138 S.E.2d 77).

The court of appeals also upheld summary judgment for the defendant in a case in which it had been raining outside and the plaintiff slipped and fell as she walked into the store. *Colbert v. Piggly Wiggly Southern,* 175 Ga.App. 44, 332 S.E.2d 304 (1985). In noting that an owner of such premises is not an insurer of the safety of persons invited therein, *id.* at 45, 332 S.E.2d 304, the court held that the true basis of liability occurs when the perilous condition is known to the owner and not known to the person injured. Because both the owner and the customer had equal knowledge of the rainy conditions, the court found no liability as a matter of law.

The court also found that the defendant's employees had been mopping the area during the day, which was sufficient to establish ordinary and reasonable care. *Id.* at 46, 332 S.E.2d 304. Noting that "it is a matter of common knowledge that some water will normally be present where shoppers pass during rainy weather," the court held that "[i]t is not the duty of persons in control of such buildings to keep a large

force of moppers to remove the rain as fast as it collects." *Id.*

In *Hagin v. Winn–Dixie Stores, Inc.*, 180 Ga.App. 303, 348 S.E.2d 766 (1986), the plaintiff had walked into a Winn–Dixie store to the area opposite the door to get a shopping cart, where she slipped and fell; it had been misting rain when plaintiff entered the store, and the floor had been mopped minutes before her fall. In upholding summary judgment, the court noted that the plaintiff knew of the rainy conditions and that the defendant had taken reasonable steps to keep the rainwater mopped. *Id.* The court held that a proprietor must exercise due care in inspecting his premises, but "he is under no duty to patrol the premises continually." *Id.* at 304, 348 S.E.2d 766.

The court of appeals reversed the trial court's denial of summary judgment in *Alterman Foods, Inc. v. Munford*, 178 Ga. App. 214, 342 S.E.2d 480 (1986). There, the plaintiff had slipped on some accumulated rain water on a rubber mat just inside the store door. The plaintiff denied seeing a wet floor sign that the bag boy had placed beside the door. The bag boy had also been instructed to mop the entrance periodically. The plaintiff testified that she did not look to see if there was water on the mat before she stepped on it. The court held that the trial court should have granted summary judgment for the defendant because the plaintiff was aware of the weather conditions and did not exercise due care. *Id.* at 215, 342 S.E.2d 480.

In *Hogans v. Food Giant, Inc.*, 185 Ga. App. 645, 365 S.E.2d 496 (1988), the plaintiff had slipped and fallen after she had entered the grocery store on a rainy day. The plaintiff was unsure what she had slipped on, but her son felt some dampness on the floor after she fell. The court of appeals upheld summary judgment for the defendant because the plaintiff could not show that the defendant had superior knowledge of the danger and because an owner of a business is not the insurer of his customer's safety. *Id.* at 647, 365 S.E.2d 496. The court noted that the plaintiff had not shown a correlation between the lack of a mat and the fall, and, moreover, even if there had been a correlation, the absence of a mat would have been obvious to her. *Id.*

In *Layne v. Food Giant, Inc.*, 186 Ga. App. 71, 366 S.E.2d 402 (1988), the plaintiff had gone to the defendant's grocery store on a rainy day. Noticing that there was no mat at the inside of the door, she walked several feet inside the store, where she slipped and fell. The court repeated the principle that it is common knowledge that water may be tracked into a store. *Id.* The court held that there was "no evidence to show superior knowledge on the part of the defendant which could give rise to a duty to remove or warn customers, so that a failure to do so could be found to constitute a failure to exercise ordinary care in keeping the premises safe." *Id.* at 72.

Again in 1989 and 1991, the court of appeals affirmed summary judgment on similar facts. In *Adams v. Winn–Dixie Stores, Inc.*, 192 Ga.App. 892, 386 S.E.2d 686 (1989), the plaintiff entered the store on a rainy day and slipped on a floor mat. The appellant maintained that she did not see a "Caution–Wet Floor" sign at the entrance. The store manager stated that he had checked the door shortly before the plaintiff fell and that he had mopped the floor. Again, the court held that it is common knowledge that moisture is tracked in a store on a rainy day and that the store had exercised due care. *Id.* at 893, 386 S.E.2d 686. In *Chafin v. Winn–Dixie Atlanta, Inc.*, 201 Ga.App. 209, 411 S.E.2d 64 (1991), the court of appeals also upheld summary judgment in a case in which the plaintiff knew of the rainy conditions and slipped on water that had dripped from shopping carts inside the store.

The facts in this case are similar to the facts in those cases in which the Georgia Court of Appeals has upheld summary judgment. The day was rainy and snowy, and the plaintiff concedes that she and her mother were aware of the weather conditions. Walking into the store at the same time as about five or six other people who had just come in from the snow and keenly aware of the inclement weather, the plain-

tiff and Ms. Fain had knowledge equal to that of the proprietor as to the possibility of water being dripped onto the floor from these incoming customers. As noted by the long line of Georgia authority, Wal–Mart was not an insurer of Ms. Fain.

Moreover, although Georgia case law indicates that a store owner need not have a force of moppers to keep the rain from his store on rainy days in order to exercise due care, *E.g., Colbert*, 175 Ga.App. at 45, 332 S.E.2d 304, a Wal–Mart employee had been mopping up water tracked in by wet customers during the morning and had *just* finished mopping dry the area on which Ms. Fain fell when she walked in the store. Indeed, Georgia courts have found that mopping, itself, can constitute due care. *Colbert*, 175 Ga.App. at 46, 332 S.E.2d 304; *Hagin*, 180 Ga.App. at 304, 348 S.E.2d 766 (periodic mopping during the day and just before the plaintiff arrived constituted ordinary care); *See also Adams*, 192 Ga.App. at 893, 386 S.E.2d 686 (mopping plus wet floor sign that plaintiff claims not to have seen constituted reasonable and ordinary care);[8] *Alterman Foods, Inc.*, 175 Ga.App. at 215, 342 S.E.2d 480 (the same).

Although the evidence is uncontroverted that there were mats in the foyer area of the store, this Court has assumed that there were no mats. *See* discussion, *supra,* at 971. Georgia cases have held that the absence of mats is not evidence of a lack of reasonable care, however. *Key*, 165 Ga.App. at 176, 299 S.E.2d 895. *Hogans*, 185 Ga.App. at 646, 365 S.E.2d 496; *Layne*, 186 Ga.App. at 71–72, 366 S.E.2d 402 (affirmed summary judgment in a rainy day slip and fall case in which no mats were present and an owner had not mopped).

The plaintiff, however, has cited a few rainy day slip and fall cases in which the court of appeals did not find summary judgment to be appropriate. The court discerns some distinctions between those cases and the present case, however. In

particular, in evaluating a motion for summary judgment in rainy day slip and fall cases, Georgia courts have generally asked two questions: (1) was the defendant's knowledge of the perilous condition superior to that of the plaintiff's, and (2) when the defendant's knowledge was superior, did he exercise ordinary care in addressing the perilous condition. *See,* O.C.G.A. § 51–3–1 (1982)[9] and cases cited *supra.*

In many Georgia rainy day slip and fall cases, the Georgia courts have presumed equal knowledge of the wet conditions by both the plaintiff and defendant and, because superior knowledge of the hazard by the owner is required to state a cause of action, the courts have approved the granting of summary judgment. *See* generally cases cited at 973–974.

In those cases in which summary judgment was reversed, the courts have generally found the presumption of equal knowledge in the particular case to be inapplicable.

Thus, in the cases relied upon by plaintiffs, the facts called into real question the general "presumption" of equal knowledge between the parties. In two cases cited by the plaintiff as reversing summary judgment, the defendants were aware of the specific hazards on which the plaintiff slipped—an ice patch and water on the floor—and purposefully chose to do nothing to remove the hazards. *Teligman v. Monumental Properties, Inc.*, 161 Ga.App. 13, 288 S.E.2d 846 (1982); *Weight Watchers of Greater Atlanta v. Welborn*, 165 Ga.App. 290, 299 S.E.2d 760 (1983). In *Carder v. K–Mart*, 185 Ga.App. 143, 363 S.E.2d 593 (1987), the assistant manager, standing near the plaintiff after a fall on a puddle 15 or 20 feet into the store, where a customer might not expect to find tracked water, remarked that he had been afraid this would happen. In *Rodriguez v. Piggly Wiggly Southern*, 185 Ga.App. 79, 363 S.E.2d 291 (1987), where the plaintiff

---

8. *See* discussion *supra* at 971–972.

9. The statute states: Where an owner or occupier of land, by express or implied invitation, induces or leads others to come upon his prem-
ises for any lawful purpose, he is liable in damages for injuries caused by his failure to exercise ordinary care in keeping the premises and approaches safe.

slipped on a puddle six inches in diameter and one-eighth inch deep, the court overturned summary judgment, imputing constructive knowledge to the owner as a result of the fact that the owner's employees had been in the vicinity of the puddle all afternoon.[10] Similarly, in *Baggs v. Chatham County Hospital Authority*, 187 Ga. App. 834, 836, 371 S.E.2d 653 (1988), the court imputed constructive knowledge of a puddle to employees who had been around the puddle all afternoon, but did not impute knowledge of the hazardous condition to a plaintiff who entered the building at a time when it had stopped raining.

Indeed, the Court of Appeals has attempted to reconcile this *Rodriguez* line of authority with the otherwise strong Georgia authority favoring summary judgment by noting that, in the former cases, there was evidence showing the proprietor's actual or constructive knowledge. *Layne*, 186 Ga.App. at 72, 366 S.E.2d 402.

Moreover, in concluding that the presumption of equal knowledge was not applicable, the courts did not read out the long line of Georgia law that recognizes the propriety of summary judgment when, as a matter of law, ordinary care has been shown. Indeed, in the most recent pronouncement on this subject cited by the parties, the Court of Appeals, in granting summary judgment, distinguished the *Rodriguez* line of cases with the other line of authority noting that some of these cases had overturned summary judgment because "a genuine issue of material fact remained as to whether the proprietor had exercised ordinary or reasonable care in the maintenance of the premises under the prevailing weather conditions." *Chafin v. Winn–Dixie Atlanta, Inc.*, 201 Ga.App. 209, 411 S.E.2d 64 (1991). In *Chafin*, just as in this case, the plaintiff was aware of

the rainy conditions and the defendant had undertaken reasonable steps to keep the floor mopped.

In carefully comparing the long line of authority authorizing summary judgment in rainy day slip and fall cases with those cases cited by plaintiff, this court concludes that the facts of this case place it in that line of authority approving summary judgment. First, based on the uncontroverted evidence, the court concludes that the owner did not have knowledge of the danger that was superior to Ms. Fain's knowledge. Plaintiff and Ms. Fain had been driving for twenty minutes in snowy, rainy weather and, walking in with several other customers, were aware that water and snow could be tracked in on the floor. According to the undisputed testimony of Ms. Quinn, she had just mopped the area dry before the plaintiff and her mother approached. If more water had been tracked in by the few incoming customers who could have entered in that interval of a few seconds, the plaintiff, approaching the spot and following people who were shaking their umbrellas and raincoats, was in at least an equal, if not arguably superior position to the proprietor, to observe whether water might have spilled onto the floor from incoming customers.[11]

In addition, pursuant to Georgia law and the uncontroverted facts of this case, the defendant exercised reasonable and ordinary care by mopping the entryway dry immediately before the plaintiff and her mother entered the store. *Hagin, supra; Chafin, supra*. This case is virtually indistinguishable from *Hagin* and *Chafin*, in which summary judgment was granted, and summary judgment is equally appropriate here.

**10.** The employees in *Rodriguez* had been mopping in the general vicinity of the fall throughout the afternoon. In this case, however, the area of the fall had just been mopped dry moments before the fall.

**11.** Indeed, the plaintiff admitted that she saw some water on the floor as she and her mother were walking in (Helms deposition, p. 76), but she offered no explanation for why she did not warn her mother (Helms deposition, p. 74), or

why she was not holding her mother's arm. Since the daughter walked ahead of her mother, it could have been the water from her own feet on which her mother fell. For purposes of this motion for summary judgment, however, the court will assume that Ms. Fain did not see water and will not give any significance to the possibility that the plaintiff fell on water that had come from her daughter's feet or clothing.

## C. CONCLUSION

For the foregoing reasons, the defendant's Motion for Summary Judgment [19-1] is GRANTED.

SO ORDERED.